517 So.2d 951 (1987)
STATE of Louisiana, Plaintiff-Appellee,
v.
Anthony L. LeBLANC, Defendant-Appellant.
No. CR86-800.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1987.
Writ Granted in part with Order; Denied in part February 5, 1988.
*954 John Crochet, Public Defender Office, Lake Charles, for defendant-appellant.
Richard Ieyoub, Dist. Atty., Saundra Isaac, Asst. Dist. Atty., Lake Charles, for plaintiff-appellee.
Before DOMENGEAUX, C.J., and GUIDRY and DOUCET, JJ.
DOUCET, Judge.
On February 24, 1986, defendant, Anthony L. LeBlanc, was indicted for the crime of aggravated arson, a violation of La.R.S. 14:51. On April 15, 1986, defendant was found guilty by a jury of twelve persons of simple arson with damages amounting to more than $500, a violation of La.R.S. 14:52. Defendant was sentenced on June 9, 1986, to serve 15 years at hard labor and pay a fine of $5,000.00, in default of payment thereof to serve an additional year in the parish jail. Defendant appeals his conviction based on eleven assignments of error. Assignment number seven has been abandoned.
The facts show that on the night of January 31, 1986, the defendant set fire to some clothing in the house trailer of the victim, Tracy Gauthier. The fire damaged personal property and the trailer itself. At trial the defendant admitted to setting the fire but claimed that he did so only after repeated requests to do so by the victim. Defendant and the victim had been dating each other for approximately fifteen months prior to the incident, but had broken up the week before.
Defendant testified that the victim asked him to burn her trailer on at least four separate occasions, the last only twelve or thirteen days before he set the fire. He stated that the victim could no longer pay the monthly mortgage note on the trailer and saw arson as a solution to that problem. His mother, Ava LeBlanc, testified that she was present on one occasion when the victim asked the defendant to burn her trailer for the stated purpose of collecting insurance proceeds. The victim denied ever asking the defendant to burn her trailer and stated that her insurance had lapsed some seven months before the fire.
On the evening in question, the defendant contacted his nephew, Darren Bruney, who drove him to the victim's house trailer situated in a local trailer park. Mr. Bruney testified that the defendant's speech was slurred and he was visibly intoxicated. Upon their arrival at approximately 11:45 p.m., the defendant knocked on the victim's door and when she answered out of a window, *955 requested that he be allowed to retrieve some of his belongings. Mr. Bruney testified that the victim voluntarily opened the door and the defendant entered while the victim testified that he opened the unlocked door after she asked him to leave. The defendant, Mr. Bruney, and the victim all testified that the victim then left the trailer and went to her neighbor's trailer. The neighbor, Mrs. Primeaux, testified that the victim appeared to be "really upset." After lighting the fire, the defendant and Mr. Bruney left the trailer park. Defendant was later arrested.
ASSIGNMENT OF ERROR NO. 1:
Defendant contends the trial court erred in denying his motion for a continuance. Defendant was indicted by bill of information that contained the following charge: That defendant did intentionally damage the property of Tracy Gauthier, to-wit: A motor home without the owner's consent by use of any explosive substance or by setting fire to, with the damage amounting to $2,000, in violation of La.R.S. 14:52. The cover of the bill stated that defendant was charged with aggravated arson, a violation of La.R.S. 14:51. On the day of defendant's trial, the district attorney moved to amend the bill to comply with the elements of aggravated arson and added: "wherein it was forseeable [sic] that human life could be endangered, in violation of LSA R.S. 14:51." After the district attorney was allowed to amend the bill, defendant moved for a continuance based on his claim that he was prepared to go to trial only for simple arson and not aggravated arson, which required a different defense. The state opposed this motion and argued that despite the error, defendant knew the state intended to prosecute defendant for aggravated arson because of the extensive pre-trial plea negotiations. The court questioned defense counsel as follows:
"THE COURT: Is Ms. Head correct that there have been plea negotiations where you had talked about amending the bill to simple arson from aggravated arson?
MR. CROCHET: I don't remember whether it said amending or pleading to simple arson. We also talked about pleading to ...
THE COURT: Well instead of going to trial on aggravated arson to plead to simple arson, is that ...
MR. CROCHET: Well let me put it this way, I was fairly sure that the District Attorney meant aggravated arson, however I am going by what the bill said as far as preparing for trial, and was hoping that she wouldn't catch it." (Emphasis added)
Defendant contends he was improperly denied a continuance under La.C.Cr.P. art. 489. This article states:
"If it is shown, on motion of the defendant, that the defendant has been prejudiced in his defense on the merits by the defect, imperfection, omission, uncertainty, or variance, with respect to which an amendment is made, the court shall grant a continuance for a reasonable time. In determining whether the defendant has been prejudiced in his defense upon the merits, the court shall consider all the circumstances of the case and the entire course of the prosecution. If it becomes necessary to discharge the original jury from further consideration of the case, the trial before a new jury will not constitute double jeopardy."
This article was intended to protect a defendant against surprise and prejudice which might result from such an amendment, and it is incumbent upon defendant to show in what respect his defense has been prejudiced by the amendment. State v. Brown, 338 So.2d 686 (La.1976). The trial judge has great discretion in deciding whether to grant a continuance to a defendant on the basis that an amendment to an indictment prejudiced the defense, and his decision will not be disturbed on appeal unless the evidence shows that he arbitrarily or unreasonably abused that discretion. State v. Davis, 385 So.2d 193 (La.1980).
In this instance, the trial court determined that defense counsel was not surprised by the amendment. In fact, defense counsel's response indicates that he was well aware that the state made an inadvertent error in the bill and hoped "she *956 wouldn't catch it." Although defense counsel argues that he had prepared a defense only to simple arson, he knew the district attorney would move to amend the bill as soon as the error came to light. Thus, defendant has failed to show surprise resulting in prejudice to his defense. The trial judge's ruling is supported by the record. We therefore find no merit to this assignment of error.
ASSIGNMENT OF ERROR NO. 2:
Defendant contends the trial court erred in denying his motion for a mistrial when the state made reference to defendant's inculpatory statements and confession in the state's opening statement.
During the state's opening statement, the district attorney stated the following:
"MS. HEAD: And then you'll hear from the defendant's nephew, Darren Bruney. Darren will tell you the circumstances that brought him and Anthony LeBlanc to Tracy Gauthier's trailer. He'll tell you why they went over there in the first place, to retrieve some of Mr. LeBlanc's personal property from Ms. Gauthier. And then he'll also tell you what happened and what was said as soon as they left that trailer park. He'll tell you that once they were about to get on the highway to head back home that he noticed the smoke rising above the trees above the trailer park, and he'll tell you what was said to him, what was explained to him when he remarked to [sic] that smoke and you'll hear Darren Bruney testify to that. Then you'll also hear from one of the detectives who was involved in the arrest of Mr. LeBlanc after a warrant was issued for his arrest. That detective went and arrested Mr. LeBlanc and he'll tell you what happened and what was said during the arrest of Mr. LeBlanc." (Emphasis added)
Defendant contends that the district attorney's reference to "they" left no doubt that it was a statement made by the defendant to the named parties. The statements that were eventually testified to included defendant's statement to his nephew that he had "burned her house" and defendant's statement to Detective Frey that defendant had been at the trailer but denied setting it on fire. Defendant contends that both of these statements were inculpatory. Therefore, the district attorney's reference to them in the opening statement was improper and constitutes reversal.
La.C.Cr.P. art. 767 states:
"The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant."
La.C.Cr.P. art. 766 states that:
"The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge."
Evidence that is not fairly within the scope of a prosecutor's opening statement is generally held to be inadmissible. State v. Risen, 357 So.2d 531 (La.1978). Thus, the prosecutor is under almost conflicting requirements in presenting an opening statement: All evidence they intend to introduce must be included in their opening statement yet confessions and inculpatory statements they intend to introduce cannot be referred to in the opening statement.
In State v. Whitmore, 353 So.2d 1286 (La.1978), the prosecutor referred to the defendant's confession in his opening statement. The court held that, although this was an error on the prosecutor's part, there were no grounds for reversal when the defendant had been notified by the state of the inculpatory statement and since the statements were later admitted into evidence, the defendant suffered no prejudice from the premature reference to them.
In this instance, the defendant was informed of the state's intention to introduce both statements. Additionally, both statements were subsequently introduced into evidence. As in Whitmore, defendant has not been prejudiced by the premature statement by the prosecutor. There is no merit to this assignment of error.
*957 ASSIGNMENT OF ERROR NO. 3:
Defendant contends the trial court erred in allowing Deputy Childress to testify in regard to a telephone conversation he had immediately after the fire. Defendant contends the statements were hearsay, and, since no hearsay exception applied, the testimony was improperly allowed.
At the trial, Deputy Childress testified that he was a resident of the trailer park and knew the victim as a neighbor. He was not officially "on duty" at the time of the fire. He learned of the fire from his wife, a police radio dispatcher, who was working at the time of the fire and who notified Deputy Childress when she learned of the fire's location. Deputy Childress assisted in containing the fire and afterwards, went inside the trailer. While there, the telephone rang. Detective Childress answered it and testified as follows:
"Q. Would you please continue, what was said when you answered the phone?
A. A man's voice asked, and like I said, I don't remember the name he asked for, if she was there. I advised, no she was not. He said, who's speaking. I said this is the sheriff's office, and he hung up.
Q. Do you remember if the person was referring to the owner of the trailer?
A. I can only assume that he was. I do not know that for sure.
Q. While you were present in the trailer, did the phone ever ring again?
A. Yes, ma'am, the phone rang again, but someone else answered it that time."
Defendant objected and contended that the statement was impermissible hearsay. The court overruled defendant's objection on the basis that the conversation was not offered to assert the truth of the conversation but only to show its occurrence.
Hearsay evidence is inadmissible in criminal trials except as provided by statute or through jurisprudentially established exceptions. La.R.S. 15:434; State v. Brown, 395 So.2d 1301 (La.1981). Hearsay evidence is testimony in court of a statement made out of court, being offered to show the truth of the matter asserted therein, and resting its value upon the credibility of the out-of-court asserter. State v. Martin, 458 So.2d 454 (La.1984). Evidence is not hearsay if it is introduced to show that the utterance occurred or that the conversation took place rather than to show the truth of the matter asserted. State v. Ratcliff, 416 So.2d 528 (La.1982).
The state asserts that the conversation was introduced only to show that it occurred. However, in order for such non-hearsay to be admissible, it must be relevant to a material issue. La.R.S. 15:435. State v. Freeman, 447 So.2d 1145 (La.App. 3rd Cir.1984), writ denied, 449 So.2d 1356 (La.1984). Relevant evidence is that tending to show the commission of an offense and intent or tending to negate the commission of the offense and intent. State v. Miles, 402 So.2d 644 (La.1981). In this instance, evidence of an unidentified telephone caller who called after a fire occurred and who hung up upon learning that a police officer answered the phone fails to prove or disprove the commission of the offense or intent. Thus, the evidence, when introduced as non-hearsay, was irrelevant and its admission was improper. However, the admission of this testimony appears to have been harmless error. Under the test for harmless error, the question is whether there is a reasonable possibility that the admission or exclusion of certain evidence might have contributed to the conviction. State v. Martin, supra. The defendant admitted on the stand that he intentionally set fire to the victim's trailer. This confession, along with the additional overwhelming testimony indicating defendant's guilt was sufficient to convict defendant of simple arson. Also, it is highly unlikely that evidence of this insignificant telephone call, in which defendant was not even shown to be the caller, contributed to defendant's conviction. As the admission constituted harmless error, this assignment has no merit.
*958 ASSIGNMENT OF ERROR NO. 4:
Defendant contends the trial court erred in allowing in evidence defendant's confession that he made to his nephew immediately after the commission of the crime. Defendant contends that under La.R.S. 15:451 the state is required to put on affirmative proof of the voluntariness of a confession before it may be admitted.
At the trial, Darren Bruney, the nephew of defendant, testified as to events he witnessed on the night of the crime. Mr. Bruney drove defendant to and from the trailer on the night in question. On the way home, defendant told Mr. Bruney that he had just burned down the trailer. Before Mr. Bruney gave this testimony, defendant objected that the state had failed to lay the proper foundation as required by La.R.S. 15:451.
La.R.S. 15:451 states that:
"Before what purposes [purports] to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises."
The state argued that this foundation was only required when a confession was given to law enforcement authorities. The trial court overruled the objection. Defendant now appeals this ruling.
In State v. Hillman, 298 So.2d 746 (La. 1974), the defendant, through no solicitation, spontaneously confessed to a close family friend that he had committed a murder. The friend coincidentally happened to be a police officer engaged to the defendant's granddaughter. At the trial, the judge refused to require the state to lay the foundation for voluntariness before the introduction of this confession. On appeal, the court held that there was no error in the judge's ruling since the unsolicited statement was not the result of any interrogation, custodial or otherwise.
Hillman, supra, is controlling in the case at bar. Here, there was no involvement by the police regarding this confession. The defendant was not interrogated in any fashion and the confession was a spontaneous declaration to a family member. The underlying purpose of the rule requiring the state to prove the voluntariness of a confession is to prevent coercive law enforcement practices. Art. 15:451 is not applicable to this type of confession. This assignment of error has no merit.
ASSIGNMENT OF ERROR NO. 5:
Defendant contends the trial court erred in refusing to allow the defendant to cross examine the victim, Tracy Gauthier, as to any mental disease or defect she had in the past. Defendant argues that the question was relevant to determine the victim's ability to remember and observe the events of the fire.
La.R.S. 15:275 provides that:
"In the discipline of his court, the trial judge is vested with a sound discretion to stop the prolonged, unnecessary and irrelevant examination of a witness, whether such examination be direct or cross, and even though no objection be urged by counsel."
In this instance, the witness's mental history was irrelevant to any issue at the trial. Defendant contended that Ms. Gauthier's past mental history would be relevant in determining her ability to remember. The witness's present memory ability was the only relevant inquiry. Defendant's question did not address itself to Ms. Gauthier's present memory abilities. The question, therefore, was irrelevant. This assignment of error has no merit.
ASSIGNMENT OF ERROR NO. 6:
Defendant contends the trial court erred in allowing the deputy state fire marshall to testify as to the amount of damage caused by the fire.
At trial Deputy State Fire Marshall Charles George testified regarding an inspection he conducted of the fire damaged trailer. He stated that as part of his duties as a deputy fire marshall, he usually estimates the amount of damage that occurs to *959 a residence due to a fire. Referring to those estimates, Mr. George testified:
"A. Yes, ma'am, but we're not always in accordance with the estimates conducted by the insurance adjustors.
Q. What do you mean by that?
A. Well, I don't claim to be a qualified property appraiser in that sense. We estimate according to our previous experience on thewhat we consider to be overall damage including heat and fire and smoke damage of the entire structure. My estimates have always been considered to be more conservative thanbecause like I said I'm not a trained adjuster to determine the exact damages involved, except the general idea of the damages.
Q. When you say conservative, do you mean that your estimates are usually less than an insurance investigator?
A. Yes, ma'am, it's always been found to be much less."
Defendant objected to Mr. George's testimony of the damage estimate because he was not qualified as an expert appraiser. The court overruled defendant's objection and allowed the question in as testimony concerning the normal course of his duties. Mr. George subsequently testified that there was approximately $2,000 in fire damage to the trailer and $1,000 to the contents.
On appeal, defendant argues that giving estimates as part of a witness's normal course of business is insufficient to allow that witness to give his opinion on the damage value. Defendant contends that testimony on valuation should have only come from an expert who has special training in this area. Defendant argues that Mr. George's testimony was particularly damaging since the state needed to prove the element of damage in excess of $500 to constitute simple arson and the state failed to present any other testimony on the damage valuation.
La.R.S. 15:463 provides:
"Except as otherwise provided in this Code, the witness can testify only as to facts within his knowledge, and neither as to any recital of facts heard by him, nor as to any impression or opinion that he may have."
Opinion evidence then, is generally inadmissible. However, La.R.S. 15:464 provides for opinion evidence from expert witnesses and states:
"On questions involving a knowledge obtained only by means of a special training or experience the opinions of persons having such special knowledge are admissible as expert testimony."
Additionally, if testimony constitutes a natural inference from things or events observed, there is no prohibition against such testimony as the opinion of a lay witness as long as that witness states the observed facts forming the basis of his opinion. State v. Alexander, 430 So.2d 621 (La. 1983).
The exception provided by State v. Alexander, supra, is not applicable to the facts of this case. The appraisal of fire damage requires special training or experience not ordinarily possessed by a layman.
Generally, the party seeking to elicit opinion testimony from an expert witness must establish to the satisfaction of the court the competency of the witness to so testify. The test of the competency of an expert is his knowledge of the subject about which he is called on to express his opinion. La.R.S. 15:466. The expert witness must also state the facts upon which his opinion is based. La.R.S. 15:465; State v. Clay, 408 So.2d 1295 (La.1982).
Mr. George was tendered by the state and accepted by the court as an expert in the field of the investigation of the cause and origin of fires. The determination of the cause and origin of fires was the witness's main responsibility. At the time of trial he had been with the State Fire Marshall's office for approximately nine years. Prior to that he had been a firefighter for twenty-eight years with the Lake Charles Fire Department including twelve years as a district chief and four years as an assistant city chief. He testified that he made a *960 routine estimate of the damages to the victim's house trailer and personal property. This assessment of damages was required as a part of his normal duties as an arson investigator. The estimates, he stated, were based on his previous experience. Expert opinion testimony is permitted from those who possess a special knowledge obtained by means of special training or experience. La.R.S. 15:464.
Although Mr. George was not formally tendered by the state or qualified by the court as an expert appraiser, we feel he was qualified, because of his experience in the field, to give an expert opinion as to the approximate monetary amount of damage caused by the fire. This figure, he freely admitted, was not precisely accurate but was, based on his experience, conservative when compared with a similar estimate by an insurance adjustor. He broke the figure, $3,000 total, down to an assessment of $2,000 in damage to the house trailer and $1,000 in damage to the contents. He adequately stated the facts upon which he based his opinion by assessing the amount based upon heat, fire, and smoke damage to the affected property.
Our finding that Mr. George's testimony on damages was admissible is similar to a finding by the court in State v. Brown, 479 So.2d 464 (La.App. 1st Cir.1985). In Brown the court held that the trial court did not err by admitting into evidence the testimony of a police officer concerning the street value of illicit drugs although the officer had not been qualified as an expert. The appellate court found that the record evidence showed that he possessed the special training and experience required to give an expert opinion on that issue.
We find no reversible error in the trial court's failure to qualify Mr. George as an expert in the field of appraisal of fire damage before allowing him to express an opinion on the subject.
But even assuming arguendo that Mr. George's opinion testimony should have been disallowed, we note that the State did introduce into evidence photographs of the damaged goods. These photos were exhibited to the jury and clearly show extensive fire damage to the interior of the trailer. While the average layman may be unable to accurately estimate the total amount of damage, the average layman could clearly conclude the total damages easily exceeded $500.00. Since the jury was shown evidence from which it could conclude that the amount of damages exceeded $500.00, any question as to the propriety of allowing Mr. George's opinion testimony becomes less significant.
ASSIGNMENT OF ERROR NO. 8:
Defendant argues that the prosecutor improperly argued to the jury that double jeopardy would bar any subsequent prosecution on a lesser arson charge, should defendant be found not guilty of aggravated arson.
At the trial, defendant admitted to committing arson with intent to defraud. This is not a responsive verdict to the charged crime of aggravated arson. Therefore, if the jury found defendant had committed arson with intent to defraud defendant could not have been found guilty of the charged crime or any lesser included offenses. At the trial, the prosecutor argued to the jury that if the defendant was found to have committed arson with intent to defraud and, therefore, was acquitted of the crime charged, the state could not retry defendant on the admitted to crime of arson with intent to defraud because this would constitute double jeopardy. Defendant argues that this argument by the state gave an impermissible prediction as to the consequences of a not guilty verdict and injected an irrelevant factor into the jury deliberation.
The prosecutor initially raised the issue during cross-examination of the defendant. The testimony went as follows:
"Q. Mr. LeBlanc, your lawyer didn't by any chance inform you that arson with intent to defraud is not a responsive verdict in this case, did you know that?
A. No, ma'am.
Q. Did you know that if for some reason, the jury believes you and you are found not guilty of this, you can't be *961 tried on arson with intent to defraud, did you know that?
A. Did I know it, no, ma'am.
Q. No.
MS. HEAD: I have no other questions.
MR. CROCHET: I have no further questions.
THE COURT: You may step down, sir.
MR. CROCHET: Defense rests."
As is evident by the transcript of the trial, defense counsel did not object at the time the alleged improper questioning occurred. However, later during closing arguments the following argument was presented by the state on rebuttal:
"MS. HEAD: All that this law requires and all it should require is that it is foreseeable that the illegal actions of this man could causemight cause that human life be endangered. Might endanger human life. No actual injuries required, just that it mightit's foreseeable that it might endanger human life. That's what the Statute is, that's what this man did. Mr. Crochet wants you to think that he is so credible because he got up there and he admitted to a crime. He admitted to arson with the intent to defraud. Well, as you've all heard, that crime isn't responsive. He can't be convicted of that crime in this trial. We can't try him again for this case.

MR. CROCHET: Objection.
MS. HEAD: That was discussed in open court, Your Honor.
THE COURT: The objection is overruled.
MS. HEAD: He can't be tried again for this case, and I'd invite each and every one of you to attend a probation revocation hearing when there is no conviction, when someone is just charged with a crime. If you have time, come down next week and see how many of those people get their probation revoked.
MR. CROCHET: Objection.
THE COURT: Objection overruled." (Emphasis added).
Thus, while defense counsel initially failed to object, an objection was raised when the prosecutor argued the issue of double jeopardy on rebuttal closing. Generally, a contemporaneous objection must be made. State v. Lee, 346 So.2d 682 (La.1977). However, the fact that a prosecutor has made a prejudicial reference with an improper argument without objection does not mean he may exploit defense counsel's inattention, or mistake by repeated prejudicial comments in the same vein. State v. Lee, supra; State v. Smith, 418 So.2d 534 (La.1982). Counsel is required to bring an error to the trial judge's attention within a reasonable time after the error occurs so that he can cure the error or declare a mistrial. State v. Lee, supra.
In Lee, supra, the state improperly referred to defendant's prior trial five times before defense counsel objected. The court ruled that defendant's objection even made after the improper fifth reference was still timely. In this instance, defendant failed to object to the initial reference but objected on the next reference. Under Lee, supra, this objection would appear timely.
La.C.Cr.P. art. 774 requires that:
"The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant."
Closing arguments in criminal cases are restricted to evidence, conclusions that may be drawn therefrom, and to the applicable law. State v. Williams, 447 So.2d 495 (La.App. 3rd Cir.1984), writ denied 450 So.2d 969 (La.1984).
A prosecutor should avoid remarks predicting societal costs and consequences of a not guilty verdict. State v. Moore, 414 So.2d 340 (La.1982), U.S. cert. denied 463 U.S. 1249, 104 S.Ct. 38, 77 L.Ed. 2d 1456 (1983). However, for a verdict to be overturned on the basis of improper argument by the state during rebuttal, the Court of Appeal must be firmly convinced that the jury was influenced by the remarks and that they contributed to the *962 verdict. State v. Guillory, 461 So.2d 492 (La.App. 3rd Cir.1984).
In this instance, the remarks by the prosecutor were improper as they allowed the jury to consider irrelevant consequences of a not guilty plea and turned the jury's attention away from their primary responsibility of determining defendant's guilt or innocence in committing the charged crime. However, as defendant has failed to show how the prosecutor's argument contributed to the verdict and since this court cannot, from the record determine that the jury's verdict was influenced by the prosecutor's remarks, any error claimed is harmless. We find no merit to this assignment of error.
ASSIGNMENT OF ERROR NO. 9:
Defendant argues that the sentencing judge imposed an illegal and/or excessive sentence.
Initially, defendant argues that he was sentenced twice; once under the habitual offender statute, La.R.S. 15:529.1 and once under La.R.S. 14:52 for simple arson with damage amounting to more than $500.00. The record does not substantiate these allegations. Defendant was adjudicated to be an habitual offender and his sentence for the crime of simple arson was enhanced because of his habitual offender status.
Defendant next argues that the fine imposed was excessive. The penalty for simple arson with damage amounting to more than $500, enhanced by the habitual offender statute, was a fine of not more than $15,000 and imprisonment at hard labor for not less than five years no more than thirty years. Defendant was sentenced to serve fifteen years at hard labor and fined $5,000, in default of which he is to serve an additional year in jail. Defendant argues that this sentence was excessive because he had no record of violence against a person and only a minimal record of offenses against property. Additionally, defendant claims the fine of $5,000 is grossly out of proportion to the crime committed and excessive in consideration of defendant's indigent status.
A sentence imposed, although within the statutory limit, may still violate the defendant's constitutional right against excessive punishment and the excessiveness of the punishment is reversible by the appellate courts. La. Const. art. I § 20; State v. Sepulvado, 367 So.2d 762 (La. 1979). The statutory guidelines of La.C.Cr. P. art. 894.1 furnish criteria by which the reviewing court can measure whether a sentence is excessive. State v. Cann, 471 So.2d 701 (La.1985). To constitute an excessive sentence, the penalty imposed must be so grossly disproportionate to the crime in light of the harm caused to society as to shock our sense of justice, or it must be the needless imposition of pain and suffering. State v. Nealy, 450 So.2d 634 (La.1984); State v. Terracina, 430 So.2d 64 (La.1983). The trial judge is given wide discretion in the imposition of sentences and sentences within the statutory limits should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Nealy, supra.
In this instance, defendant's sentence and fine were well within the statutory limits. The trial judge felt that defendant's prior criminal record, the seriousness of the offense, and defendant's past record of substance abuse warranted the imposed sentence. The sentence imposed is not even within the upper range of the possible sentence. Considering the above facts we find the sentence imposed on the defendant is not excessive.
ASSIGNMENT OF ERROR NO. 10:
In this assignment, defendant alleges that the trial court erred in imposing an alternative jail sentence in lieu of payment of the fine. Defendant was sentenced to pay a fine of $5,000, in default of payment, to serve one year in the parish jail. Defendant was an indigent.
La.C.Cr.P. art. 884 provides that:

"If a sentence imposed includes a fine or costs, the sentence shall provide that in default of payment thereof the defendant shall be imprisoned for a specified period not to exceed one year; provided that where the maximum prison *963 sentence which may be imposed as a penalty for a misdemeanor is six months or less, the total period of imprisonment upon conviction of the offense, including imprisonment for default in payment of a fine or costs, shall not exceed six months for that offense." (Emphasis added)
Article 884 requires the court to impose additional imprisonment for default of payment of a fine or costs. No exception to this rule is provided for indigent defendants.
However, it is well settled that in the case of an indigent defendant, it is impermissible to impose a prison sentence in lieu of a fine that would result in the defendant's serving a longer term than the statutory maximum for the offense. Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970); State v. Lukefahr, 363 So.2d 661 (La.1978), U.S. cert. denied 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed. 2d 241 (1979); State v. Perry, 472 So.2d 344 (La.App. 3rd Cir.1985).
While the issue at bar has never been discussed at length by the Louisiana Supreme Court, the court has recently granted writs of review to numerous cases in which indigent defendants were appealing their sentences which included a fine and/or costs and, in default of payment, imposed an additional term of imprisonment. State v. Grant, 490 So.2d 272 (La. 1986). See State v. Barlow, 488 So.2d 180 (La.1986); State v. Bartie, 488 So.2d 180 (La.1986); State v. Pinkney, 488 So.2d 682 (La.1986). State v. Williams, 484 So.2d 662 (La.1986); State v. Garrett, 484 So.2d 662 (La.1986). In each decision the court summarily affirmed the convictions but amended the sentences to delete that portion which imposed additional imprisonment in default of payment of a fine or costs and cited Williams v. Illinois, supra; Morris v. Schoonfield, 399 U.S. 508, 90 S.Ct. 2232, 26 L.Ed.2d 773 (1970); Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed. 2d 130 (1971); Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983) to support their holding.
Even before these Louisiana Supreme Court decisions were rendered this court had held that a court cannot impose a fine as a sentence and then automatically convert it into a term of imprisonment solely because the defendant is indigent and cannot pay the fine. See State v. White, 476 So.2d 1162 (La.App. 3rd Cir.1985); State v. LaGrange, 471 So.2d 1186 (La. App. 3rd Cir.1985). This line of reasoning was adhered to by this court most recently in State v. O.B. Davis, 514 So.2d 517 (La. App. 3 Cir.1987). This position has also been adopted by three other circuit courts of appeal in this state. See State v. Roye, 501 So.2d 916 (La.App. 2nd Cir.1987); State v. Bohanna, 491 So.2d 756 (La.App. 1st Cir.1986); State v. Williams, 489 So.2d 286 (La.App. 4th Cir.1986). Accordingly, we will amend defendant's sentence to delete that portion which imposes a term of imprisonment in default of payment of the fine.
ASSIGNMENT OF ERROR NO. 11:
Defendant argues that the state failed to present sufficient evidence of the value of the arson damage to prove damage greater than $500 and under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), his conviction must be reversed.
The standard of review under Jackson v. Virginia, supra, is whether a rational trier of fact, accepting the facts in a light most favorable to the prosecution, could have found defendant guilty of the crime charged beyond a reasonable doubt. State v. Chism, 436 So.2d 464 (La.1983).
This assignment of error appears to be predicated on defendant's contention that the testimony of Mr. George as to the amount of damage was inadmissible. We have rejected this assertion finding that this evidence was properly considered by the trier of fact. We also held as significant the fact that the photographs introduced in evidence and exhibited to the jury clearly show damage in excess of $500.00. In view of the expert opinion evidence, and the evidence as a whole, we find that a rational trier of fact, accepting the facts in a light most favorable to the prosecution, could have concluded that the state proved beyond a reasonable doubt that the defendant *964 was guilty of the crime of simple arson where the damage was more than $500.00.
For the reasons assigned the defendant's conviction is affirmed. His sentence is amended to delete only that portion which imposes an additional year imprisonment in the parish jail in default of payment of the $5,000 fine.
CONVICTION AFFIRMED; SENTENCE AMENDED; AFFIRMED AS AMENDED.
DOMENGEAUX, C.J., concurs.